# FREDERICK TAYLOR *et al.*

### *v.*

## BENJAMIN R. FROHOCK.

CONTRACT—*lease construed.* Where a landlord leased a farm for five years, if not sold, reserving an annual rent, payable in two equal payments during each year, and the lease provided that if the landlord sold the premises to any third party, he should pay reasonable damages to the tenant, who was to give possession to plow, and haul manure, etc, as soon as his crops were gathered, it was *held,* that two modes were provided for terminating the term,—by lapse of time, and by sale of the premises by the landlord to a third person, and that the "reasonable damages" he was to pay in the latter event, meant in case the tenancy was terminated before the end of any one year; and also that when it was so terminated at the end of a year, the tenant was not entitled to recover any damages whatever.

APPEAL from the Circuit Court of Carroll county; the Hon. W. W. HEATON, Judge, presiding.

Messrs. ARMOUR & SHAW, for the appellants.

Mr. C. B. SMITH, for the appellee.

On the fifth day of March, 1874, Benjamin R. Frohock leased to Frederick Taylor, Alexander C. Howe, and Joseph B. Taylor, a farm described in the written agreement signed by the parties, in which was reserved an annual rent " for the term of five years from the above date, if not sold, said rent to be paid in two equal payments, one-half to be paid on the first day of October, and the other half on the first day of

April, annually. If the above premises be sold to any other individual but the parties of the second part, the party of the first part to pay reasonable damages to the parties of the second part, they to give possession to plow, and haul manure, etc., as soon as their crops are gathered." Defendants took possession under this contract, and occupied the premises until March, 1875, when, on demand being made—the farm in the meantime having been sold to a third party—they surrendered the premises to the purchaser on the request of the landlord.

This action was afterwards brought by plaintiff against defendants to recover the last installment of rent for the year defendants occupied the farm. As a defense defendants claim damages by way of set-off and recoupment, which they insist resulted to them from the termination of the tenancy before the expiration of the five years mentioned in the contract.

On the trial, defendants offered to prove that at the time they surrendered possession, the rental value of the premises for the remainder of the term of five years was worth more than the money they were required to pay by the lease, and the labor they were to perform under the lease; also, to prove they were put to inconvenience and expense in leasing another farm, and in removing to it; and that it required a larger amount of rent than they had agreed to pay under this lease, to secure the use of less valuable premises; also, that they had incurred expense in procuring tools and farming implements to farm the premises of plaintiff for the full term of five years, which were less valuable by reason of the earlier termination of the tenancy; and, also, defendants offered to prove the rental value of the premises had increased after the making of the lease, and the amount of such increase; but the court excluded the testimony so offered, and defendants have preserved their exceptions to such ruling.

Defendants were permitted to prove that when they gave up the farm they had on it corn-stalks and husks in good condition for food for cattle and horses, which they were compelled to abandon, and that it cost them about $70 to buy fodder for their stock on the farm to which they removed, all

of which they would have saved had they been permitted to remain on the demised premises.

The jury found the issues for plaintiff, and assessed his damages at $406.41. On overruling the motion entered for a new trial, the court rendered judgment upon the verdict, and defendants bring the case to this court on appeal.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The questions raised on this record may be readily determined on ascertaining the meaning of the written agreement between the parties concerning the demised premises. The falacy of the position taken by defendants lies in the assumption, the contract of leasing was for an absolute term of five years. Such was not the case. Two modes of putting an end to the tenancy were agreed upon—one by the lapse of a definite period, and the other on a sale of the premises being made. One mode determined the duration of the tenancy as certainly as the other, and on the happening of either contingency the tenants were obliged to surrender possession. The premises were previously sold, but no demand was made for possession until the close of the first farming year, about the first of March, at which time defendants surrendered possession of the demised premises, as was their duty under the agreement.

It was provided, should the farm be sold to any other person than defendants, in that event plaintiff was to pay them " reasonable damages," and defendants were to " give possession to plow, and haul manure, etc., as soon as their crops· were gathered." The term " reasonable damages " is indefinite, as its meaning, and what the parties really understood by its use, is a matter for construction in the light of all the circumstances surrounding them. It will be observed the demand which terminated the tenancy, after the sale of the premises, was not made until the end of the first year, after the crops raised the previous year had matured and been harvested. Defendants were therefore subjected to no more inconvenience in moving and securing another farm than they

would have been at the expiration of five years, had the tenancy endured that length of time. There would be just as much propriety in claiming for expenses of moving and securing another farm, at the end of five years, as at the end of the first year, when the tenancy was determined in a mode to which defendants had previously given their consent. And because of the happening of the contingency which sooner put an end to the tenancy, we do not understand on what principle any claim arises in favor of defendants for the increased rental value of the premises for the period of five years. As we have seen, the tenancy was terminated at the end of one year, in consequence of the sale of the farm, as lawfully as it could have been at the end of the five years by the lapse of time. That was the agreement, and by it defendants are concluded.

It will be perceived the terms employed in the written lease show it was within the contemplation of the parties the tenancy might be brought to an end by the sale of the premises in the midst of the season for raising and maturing crops. This is evident, from the fact, it is provided defendants shall "give possession to plow, and haul manure, etc., as soon as their crops are gathered." It is in that connection, and in view of such possible contingency, plaintiff agreed to pay defendants "reasonable damages" for giving up the premises. Evidently defendants were contracting against being dispossessed before their crops were matured in any given year, and in the event they were so dispossessed, as they were liable to be under the terms of the agreement, it was agreed they should be paid their "reasonable damages." That, it seems to us, is the plain meaning of the contract. Whether it works a hardship, is not a matter for our consideration. Against the hardship of one's own contract, if fairly entered into, concerning a matter about which it is lawful to contract, it is not in the power of courts to relieve. It only remains to declare the meaning, and when that is done it measures and determines the rights and liabilities of the parties under such contracts. In the case at bar it is but just defendants should be required

to perform their contract as they made it. It will be presumed plaintiff would not have entered into it had it not been subject to the conditions therein written. Be that as it may, it is the contract of the parties, deliberately and understandingly executed, and by it they are bound.

Under this construction of the contract the rulings of the court in the exclusion of testimony offered by defendants were proper. The court adopted the true rule for ascertaining the damages, and the judgment must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY, dissenting:

I am unable to concur in the construction given to the contract in this case. By the words of the contract Frohock let the farm to the Taylors "upon the following conditions:" The Taylors "agree to pay" Frohock nine hundred and sixty dollars *per year* "for *the term* of five years from the above date," (March 5, 1874,) " if not sold." If sold, Frohock "agrees to pay reasonable damages to" the Taylors, "they to give possession to plow, and haul manure, etc., as soon as their crops are gathered." To me it is plain, that in case of sale, the Taylors were not, by the contract, to surrender the property, in case of sale, until the *end* of the year in which such sale should occur. The renting was by the year. The tenants were not to pay rent for any fraction of the year—at the rate of $960 a year—but they were to pay " $960 for each year." No provision is made for paying rent for any fraction of a year. Besides, the provision that the Taylors were, in case of sale, to give a qualified possession, for the remnant of that year, after their crops were gathered, shows that in no case were the Taylors to leave the farm, except at the end of some given year. The language is, the Taylors, in case of sale, are " to give possession to *plow*, and *haul manure*, etc., as soon as their crops are gathered." Plainly, all this means that in case of sale, during any given year, the Taylors were to retain the possession to the end of that year, and pay $960 for that year; but they were to permit Frohock, or his vendee, to have a

qualified possession for the remnant of the year after their crops were saved—possession enough to enable Frohock, or his vendee, "to plow, and haul manure," and make other appropriate preparation for the cultivation of the farm the ensuing year. It follows, that when Frohock agreed, in case of sale, "to pay reasonable damages to" the Taylors, no reference could have been had to damages which the tenant might suffer by being compelled to surrender in the midst of the current year, for no surrender was contemplated by the parties. From all the words of this contract, no damages were provided for an unseasonable dispossessing of the tenants suddenly in the midst of any current year. The words are, "if the premises be sold," Frohock "agrees to pay reasonable damages." Damages for what? Plainly for what he might lose by reason of the fact of the sale. In other words, the rent, for a term of five years, was fixed at $960 per year, with a reservation on the part of the landlord, by a sale, to end the term at the end of any given year; but in such case he would pay the Taylors any reasonable damages resulting to them from the fact of the sale and the shortening of the term. Whatever the leasehold estate of the tenant (assuming the term as five years) was worth, if anything, more than the rent reserved for that term, is the true measure of the damages. The contract, thus construed, is reasonable and mutual. It gave a fixed basis for the parties to fix the annual rent at a fair price. As construed by this court, the contract is unreasonable and lacks mutuality. How could the parties fix a reasonable rent for an uncertain time? It could not be done; for no estimate could be made as to when the term would end. For this reason it was left open, under the provision that if the landlord should sell, the tenant should lose nothing thereby, but should have damages enough (if any were needed) to make him as well off as if he kept for the full five years.